ELKO LAMOILLE POWER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 40758, 45438.    Promulgated November 12, 1930.

*Milton B. Badt, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

294

OPINION.

MATTHEWS: The sole question presented for consideration is whether the amounts paid to holders of the preferred stock were in fact dividends, or were interest on borrowed money. The circumstances surrounding the transaction have been set out in the findings. It must be determined whether the transaction constituted a loan or an investment in preferred stock.

It is the generally accepted rule that the name given to the instrument is not conclusive of its character and that inquiry may be made as to its real character, but it is not lightly to be assumed that parties have given an erroneous name to their transaction. *Leasehold Realty Co.*, 3 B. T. A. 1129; *Kentucky River Coal Corporation*, 3 B. T. A. 644. Its true nature will be determined by looking to its terms and its legal effect. *I. Unterberg & Co.*, 2 B. T. A. 274.

It will be noted that the certificate in question is issued in the ordinary form of a preferred stock certificate; that it provides for dividends at the rate of 7 per cent per annum, payable semiannually, from the surplus or net profits of the corporation, such dividends to be cumulative; that it is redeemable after 3 years at 110; that it provides for no share in additional profits over the fixed rate of 7 per cent; that the preferred stockholders have no right to vote; and that in the event of liquidation, preferred stockholders are entitled to be paid in full, both the par value of their shares and the unpaid dividends accrued thereon, before any amount is paid to the holders of common stock.

We are of the opinion that there is nothing in the contract between petitioner and the preferred stockholders which takes the holders of the preferred stock out of the class of stockholders. The preferred stock entitles the holders thereof to receive dividends from the earnings of the company before a dividend is paid on the common stock, but a preference over the holders of common stock does not make them creditors. The holder of stock in a corporation, whether common or preferred, can not, by virtue of the ownership of such stock, be a creditor of the corporation. A corporate creditor is one who has loaned to the corporation money or its equivalent, usually for compensation or interest, at a fixed rate, to be repaid at a designated time or in a designated manner. The stockholder risks his money in the enterprise. The creditor assumes no such risk. As was said by the Supreme Court of the United States in *Warren* v. *King*, 108 U. S. 389, 399:

Creditors may resort to the body of their debtor's property for interest as well as principal. But these holders of preferred stock are limited, for any income or interest, to net earnings.

In *Finance & Investment Corporation*, 19 B. T. A. 643, we held:

It will be noted that both the certificate of incorporation and the recital or contract on the face of the preferred stock certificate expressly provide that dividends on such stock are payable only from the net earnings of the petitioner. Clearly, the amounts paid in for preferred stock are at risk in the business and are a part of the capital of the petitioner.

There is nothing in the written instruments evidencing the acts of the parties inconsistent with the holding that preferred stock was issued and that the preferred stockholders had claims against the assets of the corporation which were subordinate to those of creditors, but superior to the claims of the holders of common stock. Where one advances money for a business enterprise, depending upon the hazards of the business as to whether he will receive the return of his principal or receive any profit thereon, he becomes a shareholder in the transaction.

It has been found that when the preferred stock was sold, it was agreed by petitioner that the holders of the preferred stock, upon demand, would be paid the par value of their stock, plus accrued interest, and it has been shown that such payments have been actually made where the holders of the preferred stock have presented their stock and demanded payment. In our opinion it is not sufficient to show that the issuance of the stock represented the procuring of a loan, secured by the assets of the company, which was callable at any time. It is provided in the instrument that the stock is redeemable after 3 years at 110, but there is nothing to indicate that the corporation would pay to the holder, upon demand, the par value plus accrued interest. There was not created any definite obligation

on the part of the corporation to repay a specified sum of money. Nor did the subsequent passing by the board of directors of a resolution acknowledging liability by the corporation to redeem the preferred stock at par, upon presentation and demand, change the situation which existed at the time the stock was issued and for the years involved in these appeals. At that time, the entire capital, including that paid in for both common and preferred stock, and without regard to any understanding between petitioner and the preferred stockholders, was at the risk of the business and subject to and liable for the debts of petitioner.

In *Leasehold Realty Co.*, *supra*, where it was held that certain instruments denominated preferred stock were in fact preferred stock and not certificates of indebtedness, it was said, "There is nothing in the instrument to give the strained construction that the taxpayer would put upon it. If it really were intended that the transaction was to secure money as a loan, it would have been just as convenient and easy to issue bonds or notes to carry out such intention." See also *McCoy-Garten Realty Co.*, 14 B. T. A. 853; *Angelus Building & Investment Co.*, 20 B. T. A. 667.

Petitioner has placed reliance in the case of *Arthur R. Jones Syndicate* v. *Commissioner*, 23 Fed. (2d) 833, in which the Circuit Court of Appeals for the Seventh Circuit reversed our decision, reported at 5 B. T. A. 853. It was held that a taxpayer who borrows money at usurious rates may, as against the Government, disclose the true relationship of debtor and creditor, where it appears that the relationship of the parties was incorrectly described in a document executed to circumvent the usury laws of the State in which the transaction took place. This decision is based upon the particular facts under which the loan was made and may not be extended to cover a situation where no question is involved with respect to usury.

Each case must be determined by its own facts. In the instant case, additional money was needed by petitioner. It could have been raised in several different ways, but it was decided by the officers of the company to issue preferred stock. No provision was made for the retirement of the preferred stock at a definite date or in a designated manner. Dividends were made payable only from the surplus or net profits of the corporation. The provisions of the contract between petitioner and the preferred stockholders are not inconsistent with the holding that the relation of the parties was what they said it was in their written instruments. Nor is the terminology of the company's bookkeeper determinative of the legal character of the accounts. *McCoy-Garten Realty Co.*, *supra*; *Smith* v. *Southern Foundry Co.*, 166 Ky. 208; 179 S. W. 205. The preponderance of legal authority is in support of the Commissioner's conclusion that the dividends paid by petitioner upon its shares of preferred stock

outstanding during the years 1926 and 1927, were not the equivalent of interest paid on indebtedness, and, therefore, that the amount of dividends paid upon such stock is not a legal deduction from gross income. See *Spencer* v. *Smith*, 201 Fed. 647; *Armstrong* v. *Union Trust & Savings Bank*, 248 Fed. 268.

Reviewed by the Board.

*Judgment will be entered for the respondent.*