Crown Iron Works Company, a corporation v. Commissioner.
Crown Iron Works Co. v. Commissioner
Docket No. 52992.
United States Tax Court
T.C. Memo 1956-199; 1956 Tax Ct. Memo LEXIS 92; 15 T.C.M. (CCH) 1046; T.C.M. (RIA) 56199; August 29, 1956
*92 Held: The shares of preferred stock on which five per cent return was paid by the petitioner in the years 1949 and 1950 constituted capital stock rather than indebtedness and the amounts so paid were dividends. O. A. Brecke, Esq., McKnight Building, Minneapolis, Minn., for the petitioner. Claude R. Sanders, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax of petitioner for the years 1949 and 1950 in the amounts of $927.56 and $5,025.31, respectively. He also determined that there was an overassessment in petitioner's income tax for 1948 in the amount of $2,544.01. Only one of the several adjustments made by respondent is in dispute. The only issue is whether distributions made by petitioner *93 to the holders of its preferred stock were payments of interest on indebtedness within the meaning of section 23(b), Internal Revenue Code of 1939, or whether they were dividends. Findings of Fact Some of the facts were stipulated and are so found and incorporated herein by this reference. The petitioner is a corporation organized under Delaware law with offices and factories in Minnesota. Its income tax returns for the years involved were filed with the collector of internal revenue for the district of Minnesota. On December 30, 1944, petitioner had 36,685 shares of Class B voting stock outstanding, of which Barney Johnson and the members of his immediate family owned 10,512 shares. E. L. Anderson and the members of his immediate family owned 20,256 shares and the remaining shares were scattered among a number of shareholders. The Johnson family wished to sell their stock in the corporation and Johnson negotiated with the petitioner and the Anderson family concerning a sale of the stock. Neither the Anderson family nor the petitioner could raise enough money to purchase the Johnson stock, but Johnson indicated a willingness to take promissory notes, bonds, or certain real *94 estate. The petitioner did not wish to issue bonds to the Johnson family since this was evidence of indebtedness which would be shown as a liability on the corporate balance sheet and might affect the corporation's credit and borrowing power. It was finally agreed that the corporation would make a cash payment and issue preferred stock for the balance of the purchase price. The preferred stock, among other things, provided that: (1) the holders of the stock should be paid dividends at the rate of five per cent per annum out of net earnings or any other funds legally available therefor with cumulative provisions; (2) six per cent of the originally outstanding preferred stock was to be redeemed annually by the corporation with final redemption to be made by January 1, 1960, such redemption to be at par plus an amount equal to the sum of all dividends unpaid at the date of redemption; (3) the corporation should have the right to redeem all of the stock at any time; (4) no dividend could be paid on the outstanding common stock until (a) all dividends had been paid on the preferred stock, including accumulations, (b) all required redemptions of the preferred stock had been made, and (c) *95 the corporation had sufficient earned surplus to redeem all preferred stock due for redemption during the next twelve months; (5) the preferred stock should have no voting rights unless the corporation should default in its dividend payments for a period of two years, in which instance the preferred shareholders were entitled to elect a majority of the board of directors. Since the issuance of the preferred stock, it has been carried on the corporation's books and records as capital stock and not as a part of its indebtedness. It has so appeared on all balance sheets prepared for the public or for credit purposes. In the computation of excess profits tax credit, based on invested capital, for 1945, and in the computation of unused excess profits tax credit for 1946, the preferred stock then outstanding was treated by petition as capital and not as borrowed capital. In the computation of excess profits net income for the year 1950, with regard to the computation of the base period capital addition, the dividend paid on the preferred stock was not taken into account and the preferred stock then outstanding was again treated as invested capital and not as borrowed capital. The petitioner, *96 in its income tax returns, has made an annual deduction as interest in the amount of dividends paid on the outstanding preferred stock. In 1949 Barney Johnson filed a protest under oath to a proposed deficiency in his 1945 income tax return wherein he characterized the aforementioned stock as preferred stock. In his Federal income tax returns for 1951, 1952, and 1953, Johnson reported distributions received on the stock as dividends and not as interest. Other officers or directors of the corporation, including counsel for the petitioner herein, who owned shares of such preferred stock, also reported distributions received thereon as dividends in their individual tax returns for the years 1951, 1952, and 1953. Respondent determined that the preferred stock was capital stock and not indebtedness and that the distributions on the stock were in the nature of dividends. Opinion Petitioner assigned as error on the part of the Commissioner in determining the deficiencies and overassessment, the disallowance of a deduction for interest paid on petitioner's preferred stock. No deficiency having been determined for the year 1948, we have no jurisdiction with respect to the income tax *97 of the petitioner for the year 1948. F. A. Gillespie Trust, 21 T.C. 739. The only question before us is whether the payments by petitioner in the years 1949 and 1950 to the holders of the preferred stock were payments of interest within the meaning of section 23(b), Internal Revenue Code of 1939, [1] or whether they were distributions in the nature of dividends. No hard and fast rules for determining whether payments are dividends or interest have been developed by the courts. Such determination depends upon the particular facts of each case. Some of the factors considered important are: (1) how the corporation labeled the security; (2) whether it was carried on the corporate books and records as capital or indebtedness; (3) whether the returns were payable only out of earnings; (4) whether the rights of the holders upon liquidation were superior or subordinate to the claims of creditors; and (5)the basic intent of the parties. No one of these factors *98 is necessarily conclusive in all cases, Estate of Herbert B. Miller, 24 T.C. 923 (on appeal C.A. 9), but all the facts and circumstances connected with the transaction must be considered. John Kelley Co., 1 T.C. 457, affd. 326 U.S. 521. In the instant case the securities were labeled "preferred stock." In all negotiations leading up to their issuance the parties designated them as "preferred stock." Such designation, though not in itself conclusive, is a determining factor. O.P.P. Holding Corporation v. Commissioner, 30 B.T.A. 337, affd. 76 Fed. (2d) 11. The corporation has carried the stock on its books and records as capital stock, not borrowed capital. In all financial statements for credit purposes the corporation has held out the securities as preferred stock. Such designation shows a very strong intention as to the nature of the securities. Verifine Dairy Products Corporation, 3 T.C. 269. Furthermore, dividends are payable out of earnings, which is strongly indicative of a stockholding arrangement. Commissioner v. Meridian & Thirteenth Realty Co., 132 Fed. (2d) 182, reversing on *99 other grounds 44 B.T.A. 865; John Wanamaker Philadelphia, 1 T.C. 937, affd. 139 Fed. (2d) 644. Upon liquidation the claims of the holders of the preferred stock are subordinate to the claims of creditors. This indicates that the securities are stock rather than evidences of indebtedness. Charles L. Huisking & Co., Inc., 4 T.C. 595. Finally, in case of default in the payment of dividends by the corporation, the holders of the preferred stock are given voting rights. This provision is a common characteristic of preferred stock. Charles L. Huisking & Co., Inc., supra; Northern Refrigerator Line, Inc., 1 T.C. 824. Viewing the facts as a whole, we are convinced that the preferred stock is capital stock rather than indebtedness. Accordingly we hold that the payments in question were not interest within the meaning of section 23(b), Internal Revenue Code of 1939, but were dividends. Petitioner's contention that such payments are not dividends, since they are payable out of net earnings "or any other funds legally available therefor" is without merit. Cf. Northern Refrigerator Line, Inc., supra. *100 Neither does the presence of fixed redemption dates make the preferred shareholder a creditor. See Commissioner v. Meridian & Thirteenth Realty Co., supra. Petitioner relies heavily upon United States v. Title Guarantee & Trust Co., 133 Fed. (2d) 990. We do not, however, consider that case entitled to the weight petitioner has given it in view of the divergent opinions expressed by the three judges participating therein and the state of the record on appeal. Moreover, although a different result was reached than the one we have arrived at in the instant case, insofar as the principles considered are concerned, there is no real conflict. For a discussion of the holding in that case see Gooding Amusement Co., Inc. v. Commissioner, - Fed. (2d) - (C.A. 6 - Aug. 1, 1956), affirming 23 T.C. 408. Other cases cited by petitioner, including Arthur R. Jones Syndicate v. Commissioner, 23 Fed. (2d) 833, reversing 5 B.T.A. 853 Fed. (2d) 904, reversing a Memorandum Opinion of this Court [6 TCM 1106,]; and Commissioner v. Proctor Shop, Inc., 82 Fed. (2d) 792, affirming 30 B.T.A. 721, are distinguishable *101 on their facts. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In. computing net income there shall be allowed as deductions: * * *
(b) Interest. - All interest paid or accrued within the taxable year on indebtedness, * * *.↩