**GUARDIAN INVESTMENT CORPORA-TION, Appellant,**

v.

**Robert L. PHINNEY, District Director of Internal Revenue, Appellee.**

No. 16859.

United States Court of Appeals
Fifth Circuit.

March 12, 1958.

Rehearing Denied April 14, 1958.

Charles N. Avery, Jr., Austin, Tex., Charles W. Hall, M. S. McCorquodale, C. W. Wellen, Houston, Tex. (Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., on the brief), for appellant, Guardian Inv. Corp.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Carolyn R. Just, Attys., Dept. of Justice (Russell B. Wine, U. S. Atty., John R. Locke, Jr., Asst. U. S. Atty., San Antonio, Tex., on the brief), for appellee.

Before CAMERON, JONES, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This appeal presents a question of accrual accounting under Sections 23(b), 41, and 43 of the Internal Revenue Code of 1939. Section 23(b) permits the deduction from gross income of "all interest paid or accrued within the taxable year on indebtedness".[1] Section 41 allows the taxpayer to compute net income "upon the basis of the taxpayer's annual accounting period" (fiscal or calendar year), provided the method of accounting shall "clearly reflect the income".[2] Section 43 [3] provides:

[1]. 26 U.S.C.A. (I.R.C.1939) Sec. 23.
[2]. 26 U.S.C.A. (I.R.C.1939) Sec. 41.
[3]. 26 U.S.C.A. (I.R.C.1939) Sec. 43.

"The deductions and credits * * shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', * * * is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. * * * "

## I.

The facts were stipulated. Guardian Investment Corporation, a Texas corporation with its principal place of business at Houston, Texas, is on an accrual basis of accounting. It is in the business of investing in real estate and financing sales of single family homes. Guardian is a wholly owned subsidiary of Home Owned Properties, a homebuilder or contractor specializing in constructing small homes on a large scale; transactions concerning some five hundred houses gave rise to this dispute.

Home Owned Properties sells a home to an individual purchaser, say for $6,000, payments to be made by installments over a period of years, title not to pass to the purchaser until the price is fully paid. For an agreed price, say $4,000 in cash, plus a second mortgage in the amount of $2,000, Home Owned Properties conveys to Guardian its title and its rights under its contract with the purchasing home owner. Guardian then negotiates a loan for $4,000, executing in favor of the bank or other lending agency a promissory note for $4,000 secured by a deed of trust lien or first mortgage on the property. Guardian agrees to pay the lender all amounts received from the purchaser until the first mortgage note is fully paid. Since the cash received by the loan from the bank is $2,000 less than the amount to be paid the builder, Guardian executes in favor of Home Owned Properties a second mortgage non-negotiable note for $2,000, carrying six per cent interest, bearing no maturity date. Payment of the note is subject to the following stated conditions:

"This promissory note is non-negotiable, and is payable only out of the total amount received by maker from the sale (under presently existing contract or otherwise) of the above listed tract of land over and above the amount of principal and interest and other charges payable to said Bank by reason of the indebtedness as above set forth.

"No payments whatsoever, either of principal or of interest, shall be due and owing on this note until such time as there has been paid, out of the proceeds of the sale of the above described property, the entire indebtedness of Guardian Investment Corporation to said Bank, as above set forth.

" * * * * * *

"By the execution and delivery of this note, the maker hereof does not guarantee to sell the above listed property at a price sufficient to pay off and satisfy this note; nor is this note in any way or under any circumstances an obligation binding upon the general credit of the maker hereof. The entire and only obligation and undertaking of the maker hereof is to pay to * * after payment has been made as above provided to said Bank, all moneys received and collected by the maker hereof from the sale of said above listed property until such time as this note, both as to principal and interest, is fully paid and satisfied."

Thus, no payments of principal and interest are "due and owing" on the second mortgage note until the first mortgage note is paid in full. Even then the second mortgage note is payable only out of the net proceeds of any sale of the mortgaged properties, and Guardian does not undertake to sell the property at a price sufficient to satisfy the note.

In reporting its income for the fiscal years ending February 28, 1953 and February 28, 1954, Guardian accrued and deducted the interest on the second mortgage note. The Commissioner of Internal Revenue disallowed the deduction, taking the position that the interest

was not accruable because the taxpayer's liability on the second mortgage note was contingent. After payment of the deficiency assessment, Guardian sued Phinney, District Director of Internal Revenue, in the United States District Court for the Western District of Texas, for a refund of federal income taxes in the amount of $4,016.67 plus interest for the fiscal years ending February 28, 1953 and February 28, 1954.

The case was submitted to the jury on the single issue proposed by the taxpayer: "Is it a reasonable certainty that the principal and interest of the second mortgage notes will be paid in full?" The jury answered affirmatively, returning a verdict in favor of the taxpayer. The District Court entered judgment for the Director of Internal Revenue sustaining the disallowance of the deduction notwithstanding the verdict of the jury. Guardian appeals from that judgment.

## II.

For better or for worse, the federal income tax system is married to the principle of computing net income on an annual basis. "[I]ncome and deductions [must be placed] in neatly compartmented segments—usually years—for which income and consequent liability can be determined."[4] Business judgment, supported by conventional commercial accounting practices, may impel a taxpayer to accelerate or defer a deduction from one year to another. Deductions, however, are a matter of legislative grace, and if the Federal Income Tax Law requires a deduction to be placed in a particular compartmented segment, the taxable year in which liability becomes fixed, there it must be placed, neatly or not.

Courts and Congress[5] have said that effect should be given to accepted accounting practices. Thus, in discussing Section 41, this Court observed: "Clearly what is sought by [Section 41 of] of this statute is an accounting method that most accurately reflects the taxpayer's income on an annual accounting." Schuessler v. Commissioner, 5 Cir., 1956, 230 F.2d 722, 724. But commercial accounting and tax accounting just are not always the same.[6] Conservative business policies may require a taxpayer to set aside annually a reserve for future conditional expenses. Proper commercial accounting practices may require accrual of certain items to meet contingent liabilities, in order that the balance sheet or statement of profit and loss will reflect the true condition of a business for credit purposes or for other reasons. To "clearly reflect" income for tax purposes, however, a deduction may not be taken for accrued interest on an indebtedness unless the debt is definite, fixed, and existing in the taxable year for which the deduction is sought. A contingent obligation may be a liability, but it is not a debt; and accrual is improper for tax deductions when the liability is contingent. "The prudent business man often sets up reserves to cover contingent liabilities. But they are not allowable as [tax] deductions." Lucas v. American Code Co., 1930, 280 U.S. 445, 452, 50 S.Ct. 202, 204, 74 L.Ed 538.

4. Austin, Surrey, Warren, and Winokur, The Internal Revenue Code of 1954; Tax Accounting, 68 Harvard L.Rev. 257 (1954). See also Wolder, Deduction of Reserves for Future Expenses and Deferring of Prepaid Income, 34 Taxes 524, 527 (1956).

5. See H.R.Rep. No. 1337, 83d Cong., 2d Sess. 48 (1954) and Sen.Rep. No. 1622, 83d Cong., 2d Sess. 62 (1954).

6. "Tax accounting is not, and is not intended to be, the same as other accounting." Hills, Law of Accounting (1957),

p. 48. See also Lasser and Peloubet, Tax Accounting v. Commercial Accounting, 4 Tax.L.Rev. 343 (1949); Surrey and Warren, The American Law Institute: "Gross Income, Deductions, Accounting, Gains and Losses, Cancellation of Indebtedness", 66 Harvard L.Rev. 761, 788 (1953); Seghers, Tax Accounting Compared with Recognized Accounting Principles, 27 Taxes 145 (1949); Gutkin and Beck, Tax Accounting v. Business Accounting: The Emasculation of Section 41, 79 J. Accountancy 130 (1945).

### III.

When a taxpayer uses the accrual method, "it is the right to receive not the actual receipt" that is determinative; and "when the right to receive an amount becomes fixed the right accrues". Spring City Foundry Co. v. Commissioner, 1934, 292 U.S. 182, 184, 54 S.Ct. 644, 645, 78 L.Ed. 1200. Similarly, a deduction for interest may be taken on an accrual basis only in the year in which the taxpayer's liability to pay becomes fixed or is already existing; not in the year when the taxpayer decides that it is convenient or good business to pay or accrue the interest. An obligation is not sufficiently definite for accrual until all events occur which fix and determine the liability. · United States v. Anderson, 1926, 269 U.S. 442, 46 S.Ct. 131, 70 L.Ed. 347; Lucas v. North Texas Lumber Co., 1930, 281 U. S. 11, 50 S.Ct. 184, 74 L.Ed. 668. A liability that is uncertain, indefinite, or contingent, may not be accrued and deducted until the year when it becomes certain, definite, and no longer contingent. Security Flour Mills Co. v. Commissioner, 1944, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725; Dixie Pine Prods. Co. v. Commissioner, 1944, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270; Lucas v. American Code Co., 1930, 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538; David J. Joseph Co. v. Commissioner, 5 Cir., 1943, 136 F.2d 410; Commissioner v. Brooklyn Radio Service Corporation, 2 Cir., 1935, 79 F.2d 833; Noxon Chem. Prods. Co. v. Commissioner, 3 Cir., 1935, 78 F.2d. 871, certiorari denied 296 U.S. 647, 56 S.Ct. 307, 80 L.Ed. 460.

### IV.

This is not a case for roaming through the tax field. The problem before us is one of factual interpretation: Does the second mortgage note, as worded, create a definite, fixed, existing debt in the taxable years in question? The taxpayer contends that it does and that any uncertainty or contingency relates not to the existence but to the performance —that is, payment—of the obligation. Risk of payment by a borrower or purchaser is in every debt and in most commercial transactions. If, says Guardian, absolute certainty of payment were a prerequisite to accruing and deducting interest, Section 23(b) would have little if any utility. We think that the Commissioner does not go so far. The Commissioner asks us to hold that liability is uncertain. We would not cavil at the argument that uncertainity of payment may extend beyond ordinary business risk and reach a point where it destroys the existence of a debt—for tax deductibility. That could be a legitimate description of Guardian's obligation on the second mortgage. We eschew it as a verbalism, however, at least until we take a look at the provisions of the note in the light of several cases holding that when a liability is subject to a contingency, deduction for accrued interest must be denied.

In the recent case of United States v. Virgin, 5 Cir., 1956, 230 F.2d 880, 882, a taxpayer borrowed money from his wife, repayable only if, in the opinion of the husband, the family economic security would not be jeopardized by repayment of the loan. This Court held that interest could not be deducted, because there was not such an enforceable obligation as would constitute an "indebtedness" within the meaning of the Internal Revenue Code. Judge Jones quoted from Preston v. Commissioner, 2 Cir., 1942, 132 F.2d 763, 765 that: "When payable upon a contingency, [a sum of money due by contract] becomes a debt only when the contingency has happened." The court emphasized that "there must be a fixed or determinable maturity in order that there be a debt", citing United States v. South Georgia Ry. Co., 5 Cir., 1939, 107 F.2d 3, and Brown-Rogers-Dixson Co. v. Commissioner, 4 Cir., 1941, 122 F.2d 347. "It has been repeatedly held that one of the fundamental characteristics of a debt is a definitely determinable date on which the principal falls due." Brown-Rogers-Dixson Co. v. Commissioner. Transactions between husband and wife are subject to close judicial scrutiny and some

decisions involving the tax consequences of spousal transactions may have a narrow application. Nevertheless, the Virgin case is applicable here for the principle that a liability contingent on a future event is not an indebtedness within the meaning of the Code and *in determining contingency an important element is the absence of a fixed maturity for the principal sum.*

In Pierce Estates v. Commissioner, 3 Cir., 1952, 195 F.2d 475, 478, a corporation issued debentures providing for payment of interest only out of net income and then only upon declaration of the corporation's board of directors that certain net income was to be applicable to its payment. On redemption, the taxpayer was to pay only the unpaid interest which had been *declared.* The court held that under the provisions of the debentures there was "no fixed or absolute obligation to pay interest either before or at the date of maturity of the principal of the notes". The provision for payment of the debenture interest *out of net income* is analogous here to the provision that Guardian's second mortgage would be payable only out of the net proceeds of the sale of the mortgaged properties. The requirement of action by the board of directors is comparable to the provision that no payment of principal or of interest shall be due and owing on the second mortgage note until such time as there has been action taken to sell the mortgaged properties and to liquidate the entire indebtedness of Guardian on the first mortgage. One event is just about as uncertain and indeterminable as the other. Both are future events which must occur before contingency is vitiated.

In Prudence Securities v. Commissioner, 2 Cir., 1943, 135 F.2d 340, 341, a corporation issued Series B bonds, on which no interest was due until after default and after all Series A bonds had been paid. The taxpayer was a wholly owned subsidiary of a corporation that owned the entire issue of the taxpayer's bonds. "In other words, even in the event of a default, no interest on the Series B bonds is payable unless and until all of the bonds of Series A have been paid or provided for." In the instant case too, even if there should be a default, there is no obligation to pay the second mortgage interest or principal until the first mortgage is paid. The court held that, "even aside from the parent-subsidiary relation, the taxpayer, must lose".

When we examine the second mortgage in the light of the Virgin, Pierce, and Prudence cases, we find the following elements of contingency. (1) There is no fixed or determinable date of maturity. (2) The principal and interest are *owed* and payable only on the happening of a condition: the prior payment of the first mortgage. (3) The happening of the condition is uncertain. (4) It is a future condition, the occurrence of which did not take place within the taxable years in question. (5) There is no fixed or determinable liability on the taxpayer's part or, indeed, any necessary liability; if the proceeds from the sale of the mortgaged property are not sufficient to pay off the first mortgage, the taxpayer is not under any obligation to pay any interest or principal of the second mortgage. It is not necessary to consider singly the effect of each of these elements of contingency. They all relate to the very existence of the obligation. Taken in the aggregate, they add up to the fact that in the taxable years in question the liability, such as it was, did not become a fixed, definite, existing obligation to pay the interest and principal of the second mortgage note. There was not, therefore, an indebtedness within the meaning of the Code on which interest could be accrued and deducted.

V.

The taxpayer's affirmative arguments rest on (1) the language of Regulation 118, Section 39.23(b)-1-(b) and (2) the jury finding that there was "a reasonable certainty that the principal and interest of the second mortgage notes will be paid in full".

(1) Regulation 118, Section 39.23(b)–1–(b) reads:

"Interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness. * * *"

Guardian argues that the regulation expressly makes it "immaterial" whether the taxpayer is directly liable. From this starting block the taxpayer leaps to the inference that no personal liability is necessary and ends with the false conclusion that indebtedness is not really a requirement. Apparently, if Guardian pays or accrues interest on any kind of liability, Guardian would deduct the amount paid or accrued.

■ This construction misses the point of the regulation. The object of the Regulation is to relax the general rule that interest is not deductible unless it is paid on an obligation *of the taxpayer*.[7] The Regulation relaxes the rule by recognizing "equitable liability" on the part of a taxpayer who may be secondarily or indirectly liable.[8] The emphasis is on the word "direct", not on "liability". The Regulation does not purport to bear on the codal necessity that an obligation be fixed, definite, and existing in order to qualify as an "indebtedness" on which interest may be paid or accrued.[9]

New McDermott, Inc., v. Commissioner, 1941, 44 B.T.A. 1035, relied on by Guardian, does not support the taxpayer's construction. In that case a taxpayer on an accrual basis bought real estate subject to a mortgage. He did not assume the mortgage until after the taxable year, so that he was not *directly* liable—but the debt was fixed, certain, and existing. The Board of Tax Appeals held: "In order that petitioner may have a deduction for interest accrued, however, the interest must be due on an indebtedness of the taxpayer", but "the indebtedness [in effect] was that of the petitioner" who had to pay the principal and interest in order to clear the property. There was no question as to the existence of the debt or its certainty and no intimation that liability was immaterial. "Interest accrued on the mortgage is

7. "Deductions [under Section 23(b)] may not be taken unless the interest was owed upon an indebtedness of the taxpayer." Commissioner v. Henderson's Estate, 5 Cir., 1945, 147 F.2d 619, 620. "The statutory provision allowing deduction for interest on indebtedness means interest on an obligation of the taxpayer claiming it; payments made on obligations of others do not meet the statutory requirements." Sheppard v. Commissioner, 1943, 37 B.T.A. 279. See Commissioner v. Breyer, 1947, 3 Cir., 151 F.2d 267, citing New McDermott, holding transferees could deduct interest paid on debts incurred by the transferor where the property transferred was subject to liability. The obligation is regarded as the transferee's.

8. "The Code permits a deduction for all 'interest' paid or accrued 'on indebtedness.' If such indebtedness represents a direct obligation *of the taxpayer*, the interest properly due thereon is clearly deductible. But if the doctrine is not pushed too far, such interest is also deductible by a person under an equitable liability to pay it as having received, in substance, the benefit of the indebtedness. The interest must be properly due and payable. The Regulations, promulgated under the 1939 Code, appear to recognize this principle of equitable liability in providing that 'interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note' secured by the mortgage, may be deducted. Obviously, interest paid for another person is not deductible." 4 Mertens, Law of Federal Income Taxation, Section 26.03.

9. "Of course, it is necessary to show not only that the taxpayer is not paying off someone else's liability but that there is, in fact, an existing indebtedness which gives rise to an interest charge. * * * The term 'indebtedness' as used in the Code implies an unconditional obligation to pay. A contingent or inchoate claim may be a liability, but it is not a debt, at least until the contingency happens." 4 Mertens, Law of Federal Income Taxation, Section 26.04.

interest on petitioner's indebtedness in spite of the fact that petitioner was not *primarily* liable on the mortgage."

Guardian relies heavily on Ohmer Register Co. v. Commissioner, 6 Cir., 1942, 131 F.2d 682, 683, 143 A.L.R. 1164 which is said to be directly in point. In that case the taxpayer's agents were paid sales commissions which were entered on the company's books immediately upon acceptance of a sales order. The commissions were subject to reduction for returns and adjustments, and amounts were charged back against an "agent's commission account". The Court held that Ohmer could accrue the commissions. The distinguishing factor in the Ohmer case is that taking the commissions as a whole, there was no doubt as to the existence of the basic obligation; there was doubt only as to the amount.[10] The Court pointed out that Ohmer set up a reserve for collection expense and that "both the petitioner and its agents have treated the agents' commissions as earned and as definite obligations of the petitioner entered as such on its book at the time goods were shipped pursuant to accepted orders." The Court held: "The fact that the agent might not, in the end receive his full commission is no more material than that the petitioner might not receive full payment of the purchase price * * *." The items of commission expense "were definitely incurred and fixed liabilities within the taxable year" and the taxpayer's true income could not be reflected clearly unless the commissions were deducted from the gross income.[11] That is not the case here.

Natco Corporation v. United States, 3 Cir., 1956, 240 F.2d 398, 401 lends no support to Guardian's position. In that case the taxpayer, reorganized under Section 77B of the Bankruptcy Act, issued debentures subordinate of course to outstanding first mortgage bonds. Interest on the debentures was payable only after the first mortgage bonds had been paid and the debentures could not be redeemed without payment of principal and interest to date. The Commissioner contended that interest on the debentures should have been accrued. This, Guardian urges, is inconsistent with the Government's position in the instant case. There is no inconsistency. In Natco, as the Court pointed out, the debentures provided "unequivocally for the payment of the principal and interest no later than the maturity date". The indenture provided that "the obligation of the Company which is absolute and unconditional to pay at the date of maturity

---

10. In Holland's Accrual Problems in Tax Accounting, 48 Mich.L.Rev. 149, 173, 180 (1949) Ohmer is cited in support of the statement: "If collection of the item is uncertain only because of the normal risk involved in all business transactions, accrual is required. If such possibility of non-payment were to be accepted as a sufficient reason for not recognizing an item of income, the whole theory of the accrual method of accounting would fall where commercial transactions are concerned. This seems so obvious that it is surprising that the courts have found it necessary to state it on several occasions. * * * If there exists any uncertainty as to the amount due, accrual is allowed only where all events have occurred which make it possible for the taxpayer to estimate the amount due with reasonable accuracy." See Uncasville Manufacturing Co. v. Commissioner, 2 Cir., 1932, 55 F.2d 893; Continental Tie

and Lumber Co. v. United States, 1933, 286 U.S. 290, 52 S.Ct. 529, 76 L.Ed. 1111; Baltimore & Ohio Railroad Co. v. Commissioner, 4 Cir., 1935, 78 F.2d 456; American National Co. v. United States, 1927, 274 U.S. 99, 47 S.Ct. 520, 71 L.Ed. 946.

11. "The Court [in the Ohmer case] was there concerned with the problem of 'contingency' of the disputed deductions. It allowed the deductions claimed, but I think only because the corresponding income, in the production of which the expenses had been incurred, had been reported also in the same year. Income and expense were subject to the same contingency. By reporting them together, true income was reflected and 'both sides of the ledger' were 'treated alike'." Shelby Salesbook Co. v. United States, 1952, D.C.Ohio, 104 F.Supp. 237, 239. See also 143 A.L.R. 1171, 1172.

* * * the principal thereof and interest thereon". The Court held therefore that "this obligation to pay is not contingent upon the payment of the first mortgage bonds".

▆▆▆ (2) The verdict of the jury is not determinative of the issue (on which the case turns.) The jury decided only that some time in the future there was a reasonable certainty that Guardian would pay the principal and interest on the second mortgage.[12] That is not enough. The taxpayer must be obligated unconditionally during the taxable years in question to pay the principal and interest in order to have an accruable expense for tax deduction purposes.

12. Resourceful counsel for the taxpayer also argued that uncertainty of payment is completely immaterial, citing Fahs v. Martin, 5 Cir., 1955, 224 F.2d 387; Keebey's, Inc., v. Paschal, 8 Cir., 1951, 188 F.2d 113; and Zimmerman Steel Co. v. Commissioner, 8 Cir., 1942, 130 F.2d 1011, 143 A.L.R. 1054. These cases car-

## VI.

Business and accounting practices may justify Guardian accruing interest on its second mortgage notes. Unfortunately for the objective of harmonizing business accounting and tax accounting, the Commissioner of Internal Revenue and this Court have less than a free hand in allowing deductions for accrued interest. On the language of the second mortgage note before us, this Court must hold that the taxpayer's liability to pay the principal and interest on the note, for the taxable years 1953 and 1954, was contingent. Interest on the note may not be accrued and deducted. Judgment is

Affirmed.

ry accrual to the outer limits when there is improbability of payment, but in none is there any uncertainty of liability. See discussion, 2 Mertens, Law of Federal Income Taxation, Sec. 1295 and Holland's Accrual Problems in Tax Accounting, 48 Mich.L.Rev. 149, 172, 177 (1949).