**FRED NESBIT DISTRIBUTING CO., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 84–197–B.**

United States District Court, S.D. Iowa, C.D.

March 7, 1985.

Kevin M. Abel, Belin, Harris, Helmick, Heartney & Tesdell, Des Moines, Iowa, for plaintiff.

Richard Turner, U.S. Atty., Des Moines, Iowa, Daniel F. Ross, Trial Atty., Tax Division, Dept. of Justice, Washington, D.C., for defendant.

MEMORANDUM OPINION, RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT, AND ORDER FOR DISMISSAL

VIETOR, District Judge.

This is an action under 28 U.S.C. § 1346(a)(1) for recovery of income taxes and interest that plaintiff taxpayer claims were erroneously assessed and collected by the defendant. The parties have stipulated to the final submission of the case on cross motions for summary judgment, which are now submitted.

The issue presented is whether beverage container deposit money received during fiscal year 1980 by plaintiff Nesbit, an accrual basis taxpayer in the wholesale beer distributing business, must be treated as income despite Nesbit's statutory obligation to refund the deposit for each container returned for redemption in later years.

### FACTS

The material facts are undisputed. The state of Iowa enacted a "bottle law" that became effective July 1, 1979. Iowa Code Chapter 455C (1983). Under the statute, which encourages the reclamation of beverage containers in which alcoholic liquor, beer, and soft drinks are sold to consumers for off the premises consumption, the retail dealer must charge a deposit of not less than five cents upon sale to the consumer and must refund the deposit when the empty container is returned. Iowa Code § 455C.2(1). The consumer may also obtain the refund by returning the container to a redemption center. *Id.* The distributor must pick up the returned containers of the brand and size sold by it from its dealers or, on request, from a redemption center, and pay the dealer or redemption center the refund value. Iowa Code § 455C.3(2). The statute does not specifically require the distributor to collect a deposit when the distributor sells to the dealer, but that is what Nesbit does.[1] Nes-

---

1. Nesbit is not charged a container deposit when it purchases the beverages from the bot-

tler. See Iowa Code § 455C.3(3).

bit does not retain title to the containers upon sale. Essentially, it sells and later repurchases the containers. The bottle law applies to both refillable and nonrefillable beverage containers. Iowa Code § 455C.1(2), (10). The used nonrefillable containers have no value except as scrap.

The effective date of the new bottle law coincided with the first day of Nesbit's fiscal year. Nesbit segregated the nonrefillable container transactions in a "deposits refundable" account.[2] During the fiscal year Nesbit's collections of nonrefillable container deposits yielded $1,259,681; it paid out $1,003,983, leaving an account balance at the close of its tax year of $255,698. Based upon its experience during the year, Nesbit estimated that ten per cent of the nonrefillable containers sold would never be redeemed, and therefore adjusted the deposits refundable account downward by $125,968 and included that amount as income in its income tax return for the year ended June 30, 1980.

At issue is the correct tax treatment of the $129,730 that remained in the account. As an accrual basis taxpayer, Nesbit is permitted to deduct from gross revenues certain liabilities that are sufficiently concrete to be regarded as current business expenses even though not paid in the tax year in question. Nesbit considered its obligation to redeem sold but unreturned nonrefillable containers to be an accrued liability, and thus did not treat the $129,730 as taxable income. The Internal Revenue Service took a contrary position, and assessed Nesbit a deficiency for tax owed on the deposits refundable balance. Nesbit paid the tax and filed a claim for refund in the amount of $59,675, which was disallowed. Nesbit then commenced this action.

The test for whether a liability may be taken as a deduction by an accrual basis taxpayer is known as the "all events" test,

and is set out in 26 C.F.R. § 1.446–1(c)(1)(ii):

> Under [the accrual] method, deductions are allowable for the taxable year in which all the events have occurred which establish the fact of the liability giving rise to such deduction and the amount thereof can be determined with reasonable accuracy. The method used by the taxpayer in determining when income is to be accounted for will be acceptable if it accords with generally accepted accounting principles, is consistently used by the taxpayer from year to year, and is consistent with the Income Tax Regulations.

The sole disputed issue presented is whether, in the taxable year in question, all of the events occurred establishing liability.

The government contends that Nesbit fails to satisfy the all events test because its liability to refund a container deposit is contingent upon the tender of the container by the retailer or redemption center; that before tender, liability is not established. Nesbit argues that its obligation to repurchase the container arises at the moment Nesbit sells it to the dealer.

Nesbit bases its argument on the assumption that under the statute the fact of its liability arises when it sells its inventory in nonrefillable containers because the statute requires that the distributor be ultimately liable for the refund of the deposit. However, the relevant provisions of Iowa Code Chapter 455C do not support Nesbit's assumption. Section 455C.3(2) establishes the obligation of the distributor concerning the redemption of containers:

> A distributor shall accept and pick up from a dealer served by the distributor or a redemption center for a dealer served by the distributor any empty beverage container of the kind, size and brand sold by the distributor, and shall pay to the dealer or person operating a

---

**2.** The treatment for tax purposes of the deposits and refunds on refillable containers sold by plaintiff is not involved in this action.

The deposits refundable account on nonrefillable containers was set up for bookkeeping purposes only; the actual funds were channeled

through Nesbit's general corporate checking account. Although the government attaches particular significance to the commingling of funds, it is immaterial to the resolution reached by the court.

redemption center the refund value of a beverage container and the reimbursement as provided under section 455C.2. This subsection shall not apply to a distributor selling alcoholic liquor to the Iowa beer and liquor control department.

The statute contains no reference to the sale of the container by the distributor to the retail dealer.

The statute does not predicate a distributor's liability on its sale to the retail dealer. True, as a seller of a particular brand and size of beverage a distributor is obligated to redeem containers when they are presented. However, a distributor must redeem any such container returned to it regardless of whether it in fact was the original seller of that particular container. A newly-formed distributor would be obligated to redeem containers presented to it although they had been sold by another distributor prior to its existence. A distributor that goes out of the distributing business would not be obligated to thereafter redeem containers even if it had sold them. The clear language of the statute demonstrates that the obligation to pay a refund does not arise until the time the container is tendered for refund by a dealer or redemption center. Nothing else about the container reclamation procedure suggests the existence of a liability tied to the original sale of the container.

The fact that experience shows that all of the events establishing liability will occur in the future in respect to about 90% of the containers may justify Nesbit's treatment for financial accounting purposes, but it does not satisfy the all events test because all of the events establishing liability have not yet occurred. *See Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 541, 99 S.Ct. 773, 785, 58 L.Ed.2d 785 (1979), in which the Court noted that "divergence between tax and financial accounting is especially common when a taxpayer seeks a current deduction for estimated future expenses or losses."

The result this court reaches accords with the treatment given reusable cement sacks in *Northwestern States Portland*

*Cement Co. v. Huston*, 126 F.2d 196, 200 (8th Cir.1942), and reusable cable reels in *Okonite Company v. Commissioner*, 4 T.C. 618 (1945), *aff'd on other grounds*, 155 F.2d 248 (3rd Cir.), *cert. denied*, 329 U.S. 764, 67 S.Ct. 125, 91 L.Ed. 658 (1946). Perhaps more instructive although factually dissimilar is *Brown v. Helvering*, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1934), applying the all events test. In *Brown*, the taxpayer, a general agent to an insuror, credited to a reserve account a percentage of his paid-in premiums, to provide for refunds on policies cancelled before expiration; the amount of the reserves at year's end was deducted from the taxpayer's gross income. The Court held the deduction improper because the taxpayer's liability to make refunds was contingent. *Id.* at 200, 54 S.Ct. at 359.

> In respect to no particular policy written within the year could it be known that it would be cancelled in a future year.... Experience taught that there is a strong probability that many of the policies written during the taxable year will be so cancelled. But experience taught also that we are not dealing here with certainties.

*Id.* at 201, 54 S.Ct. at 360. More recent cases applying the all events test in a similar fashion are *Bennett Paper Corp. v. Commissioner*, 699 F.2d 450, 453 (8th Cir. 1983) and *Guardian Investment Corp. v. Phinney*, 253 F.2d 326, 329–330 (5th Cir. 1958). *Cf. Thor Power Tool Co.*, 439 U.S. at 541–42, 99 S.Ct. at 785–86.

The two principle cases relied upon by Nesbit are distinguishable because in neither of them was the existence of the liability contingent upon some future event. In *Ohio River Collieries Co. v. Commissioner*, 77 T.C. 1369 (1981), the final event giving rise to a state-mandated obligation to perform reclamation work had occurred in the year in which the deduction was taken: the taxpayer had strip-mined the land and the only contingency was the cost of the actual reclamation work to be performed in future years. Likewise, in *Kaiser Steel Corp. v. United States*, 717 F.2d

1304 (9th Cir.1983), past events established the taxpayer's liability for uncontested workers' compensation claims for injuries suffered during the taxable year, and only the amount of the compensation awards remained in question.

The court concludes that Nesbit's obligation to redeem nonrefillable containers not yet returned at the end of its taxable year was contingent, and liability thereon had not accrued. The claim for refund was properly disallowed.

## RULING AND DISMISSAL ORDER

Plaintiff's motion for summary judgment is overruled. Defendant's motion for summary judgment is granted, and it is ordered that plaintiff's complaint be dismissed.